DA 12-0278

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2013 MT 169

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER NELS BULLPLUME,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause No. CDC-11-305 Honorable Kenneth R. Neill, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Sarah Chase Rosario, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          John Parker, Cascade County Attorney, Kory Larsen, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: April 24, 2013

Decided: June 25, 2013

Filed:

_____

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Christopher Nels Bullplume was convicted of failing to provide notice of his change of residence when required to do so as a sexual offender.  The Eighth Judicial District Court, Cascade County, imposed a four-year suspended sentence.  Bullplume appeals several conditions of that sentence.  We affirm.

¶2    We restate the issues on appeal as follows:

1.    Whether Bullplume has waived appellate review of the District Court's requirement that he pay the costs of his court-ordered evaluations and treatment.

2.    Whether the District Court abused its discretion in imposing conditions 26 through 40, which relate specifically to sexual offenders.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    In 1993, Bullplume was convicted of first-degree rape in the State of Washington.  As a result of that conviction, he is required to register as a sexual offender.  Bullplume has discharged the Washington sentence that was imposed.

¶4    On August 1, 2011, Bullplume was arrested in Great Falls for misdemeanor offenses of driving under the influence (DUI), disorderly conduct, driving without insurance, and driving while license suspended.  Law enforcement officers ascertained that Bullplume was a registered sexual offender from Washington and that a warrant had been issued for his arrest in Washington because he had absconded from his last known address in June 2011.  Officers further determined that Bullplume had not registered as a sexual offender in Great Falls.  A detective spoke with Bullplume, who admitted that he

2

had left Washington approximately two months earlier and that he had been living in Great Falls for about two weeks.

¶5 On August 11, 2011, the State charged Bullplume with failing to register, a felony, in violation of §§ 46-23-505 and -507, MCA (2009). The State and Bullplume ultimately entered into a binding plea agreement under § 46-12-211(1)(b), MCA. In exchange for Bullplume's guilty plea, the State agreed to recommend a four-year commitment to the Montana State Prison, with all time suspended. On November 1, 2011, Bullplume appeared in court and changed his plea to guilty. A presentence investigation report (PSI) was ordered. As required by § 46-18-111(1)(b), MCA, a psychosexual evaluation was prepared in conjunction with the PSI.

¶6 The PSI was filed with the District Court on February 22, 2012. It reflected that Bullplume, age 34 at the time, was unemployed and relied on family as a means of support. In addition to his 1993 conviction for rape, Bullplume had convictions for felony possession of heroin (1995) and felony unlawful possession of a firearm (2006). He also had two convictions for DUI (2001 and 2003) and had been arrested for his third DUI when the State charged him with failure to register. Additionally, Bullplume had a conviction for felony attempt to elude (2001), as well as two prior convictions of felony failing to register as a sexual offender in Washington (2001 and 2003). The PSI notes that Bullplume's charge of failing to register in the instant case occurred not long after his release in 2010 from a four-year incarceration in Washington State Prison on a firearm offense.

¶7 Dr. Donna M. Zook conducted the psychosexual evaluation and prepared a report for the District Court. Dr. Zook determined that "[t]he veracity and trustworthiness of Mr. Bullplume's self-report is questionable" in that "[h]is account of events do not coincide with records." Dr. Zook found that "[t]he most salient factor regarding Mr. Bullplume's character is his lack of shame, guilt, or remorse regarding antisocial behaviors that he committed and the effects on others." Dr. Zook provided the following summary of Bullplume:

> In summary Mr. Bullplume is a moderate risk for repeated sexual offending due to: (1) criminal history; (2) lack of honesty during the clinical interview portion of the evaluation; (3) invalid MMPI-2; (4) denial of sexual interests, fantasies, urges, or drive; (5) poor social adjustment and inability to cope with daily demands; (6) low empathy and callous and irresponsibility to family and others; (7) lacking insight and judgment due in part to cognitive processing at the level of a child; (8) extensive alcohol and drug history; (9) emotional detachment and lack of guilt, shame or remorse for his previous criminal behavior; (10) poor or inadequate pro-social support and influence; and (11) lacking distress and motivation for change.

Dr. Zook concluded that Bullplume was a moderate risk to repeat a sexual offense and designated him a Level 2 offender. *See* § 46-23-509(2), MCA.

¶8 The District Court conducted a sentencing hearing on February 28, 2012. The State recommended that the court impose the four-year suspended sentence called for in the plea agreement. In addition, the State requested that the court impose all 41 of the probation conditions recommended in the PSI. Bullplume objected to conditions 26 through 40, which the PSI describes as "standard sexual offender conditions." He argued (1) that failure to register is not a sexual offense which would necessitate conditions relating to sexual offenders and (2) that there was an insufficient nexus to impose the

4

conditions because the underlying rape conviction had occurred nearly 20 years earlier. Bullplume did not object to any of the other recommended conditions.

¶9 The District Court orally imposed a four-year suspended sentence and allowed the parties an opportunity to brief the applicability of conditions 26 through 40. In the subsequent written Sentence, issued March 8, 2012, the District Court affirmed the imposition of conditions 26 through 40 under the authority of *State v. Malloy*, 2004 MT 377, 325 Mont. 86, 103 P.3d 1064.

¶10 In his opening brief on appeal, Bullplume challenges the District Court's imposition of not only conditions 26 through 40, but also conditions 11, 21, and 22, which prohibit him from gambling, entering bars, and entering casinos, respectively. Additionally, Bullplume argues, for the first time on appeal, that the District Court lacked authority to require him to pay the costs of his court-ordered evaluations and treatment. In his reply brief, however, Bullplume concedes the validity of the State's argument that he may not obtain appellate review of conditions 11, 21, and 22 due to his failure to object to these conditions in the District Court. Bullplume maintains only his challenge to conditions 26 through 40, as well as his claim that the District Court lacked authority to impose the costs of court-ordered evaluations and treatment. With respect to the latter, the State notes that *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979), provides a basis for this Court to review whether the District Court had authority to require Bullplume to pay for his evaluations and treatment.

¶11 Conditions 26 through 40 may be summarized as follows:

- Bullplume shall enter and successfully complete sexual offender treatment at his own expense. He shall remain in Aftercare or Relapse Prevention Class for the entirety of his supervision unless released at the discretion of the probation and parole officer and the therapist. He shall reenter treatment at any time if deemed appropriate by the probation and parole officer and the therapist. (Conditions 26, 37, 38.)

- Bullplume may not have contact with any individual under the age of 18 unless accompanied by an approved and appropriately trained, responsible adult. He may not reside in a residence where there are any children under the age of 18 without the written approval of the therapist and the probation and parole officer. He may not date, live with, or otherwise be aligned with any person with children under the age of 18 without the express prior approval of the therapist and the probation and parole officer. (Conditions 27, 34, 40.)

- Bullplume shall not frequent places where children are present or reasonably expected to be present—including schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, and holiday festivities—unless accompanied by an approved and appropriately trained, responsible adult. He shall obtain permission from the probation and parole officer prior to going to any of these places. (Condition 28.)

- Bullplume may not access or have in his possession or under his control any material that describes or depicts human nudity, the exploitation of children, consensual sexual acts, nonconsensual sexual acts, or sexual acts involving force or violence, without prior written approval of the probation and parole officer and the therapist. He may not frequent adult book stores, topless bars, or massage parlors, or use the services of prostitutes. He may not view television shows or motion pictures that are sexually stimulating, or access "900" telephone sex lines. (Conditions 29, 30, 35.)

- Bullplume shall not have access to the Internet without prior permission from the probation and parole officer and the therapist. If Internet access is allowed, Bullplume must allow rating control software to be installed and random searches of the hard drive to be conducted for pornography or other inappropriate material. He may not have a cell phone or other such device with photo or Internet capabilities. (Conditions 31, 36.)

- Bullplume shall be designated a Level 2 sexual offender. (Condition 32.)

- Bullplume shall be subject to reasonable employment or occupational prohibitions and restrictions under § 46-18-255(1), MCA. (Condition 33.)

- Bullplume shall submit to annual polygraph testing. (Condition 39.)

¶12 The requirements that Bullplume pay the costs of evaluations and treatment are contained in conditions 17, 18, and 26, which provide as follows:

> 17.  The Defendant shall obtain a chemical dependency evaluation by a state approved evaluator. The Defendant must pay for the evaluation and follow all of the evaluator's treatment recommendations.

> 18.  The Defendant shall obtain a mental health evaluation/assessment by a state approved evaluator. The Defendant must pay for the evaluation and follow all of the evaluator's treatment recommendations.

. . .

> 26.  The Defendant will enter and successfully complete sexual offender treatment with a MSOTA clinical member or associate member with supervision, or equivalent, who is approved by the state and the Probation & Parole Officer and at the Defendant's expense. The Defendant shall abide by all treatment rules and recommendations of the treatment provider.

¶13 With regard to conditions 26 through 40, Bullplume argues that, given "more than (19) nineteen years of living without committing a crime of violence or a sex crime, and a lifetime of never committing a crime involving children," there is an insufficient nexus between the offense/offender and the conditions. With regard to conditions 17, 18, and 26, he asserts that the District Court was without statutory authority to require that he pay the costs of his evaluations and treatment. The State argues that the District Court did not abuse its discretion in imposing conditions 26 through 40 in light of Bullplume's criminal history, the PSI, and the psychosexual evaluation. The State further argues that it was within the broad authority of the District Court to require Bullplume to pay the costs of his evaluations and treatment.

7

**STANDARD OF REVIEW**

¶14     We review restrictions or conditions on a criminal sentence for both legality and abuse of discretion. *State v. Melton*, 2012 MT 84, ¶ 16, 364 Mont. 482, 276 P.3d 900.

**DISCUSSION**

¶15     ***Issue One. Whether Bullplume has waived appellate review of the District Court's requirement that he pay the costs of his court-ordered evaluations and treatment.***

¶16     As noted, Bullplume did not object to the District Court's requirement that he pay the costs of his court-ordered evaluations and treatment as conditions of his probation. Generally, this Court will not review a claim where the defendant failed to object to the alleged error in the trial court. *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892; *State v. Micklon*, 2003 MT 45, ¶ 8, 314 Mont. 291, 65 P.3d 559. As the parties correctly point out, however, we have created an exception to this general rule where a defendant alleges that a sentence exceeds statutory parameters and is, therefore, illegal. *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000; *State v. Muhammad*, 2002 MT 47, ¶ 23, 309 Mont. 1, 43 P.3d 318. Part of the rationale behind this exception "is that, as a practical matter, 'a defendant often times must remain silent even in the face of invalid conditions' to guard against the possibility that the sentencing court may forego a more lenient sentence if the defendant objects to one of the conditions." *Micklon*, ¶ 9 (quoting *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000). We have declined to apply the *Lenihan* exception, therefore, in a situation where the defendant "affirmatively agreed" at sentencing to the condition he now asserts as error on appeal. *Micklon*, ¶ 10.

¶17 For purposes of applying *Lenihan*, we have held that a sentence which may be objectionable is, nevertheless, legal if it falls within statutory parameters. *Kotwicki*, ¶ 16. We explained that "a sentencing court's failure to abide by a statutory requirement [such as consideration of the defendant's ability to pay] rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13 (citing *State v. Nelson*, 274 Mont. 11, 906 P.2d 663 (1995), and *State v. Swoboda*, 276 Mont. 479, 918 P.2d 296 (1996)). In *Nelson* and *Swoboda*, we held the *Lenihan* exception inapplicable despite allegations that the sentencing court had failed to abide by statutory requirements. Both cases involved situations where the trial court had failed to consider sentencing alternatives as required by § 46-18-225, MCA, before imposing a prison sentence upon a nonviolent offender. The defendants in each case had failed to object to the court's error at the sentencing hearing and attempted to invoke the *Lenihan* exception on appeal. We observed, however, that the trial court, after considering the requirements of § 46-18-225, MCA, legally could have sentenced Nelson and Swoboda to prison, and thus their sentences failed to meet the illegality requirement for applying the *Lenihan* exception. *Nelson*, 274 Mont. at 20, 906 P.2d at 668; *Swoboda*, 276 Mont. at 482, 918 P.2d at 298. Accordingly, where the sentencing court, if provided the opportunity to consider the error now asserted on appeal, could nevertheless have imposed the same sentence, the illegality requirement of the *Lenihan* exception has not been met. *Nelson*, 274 Mont. at 20, 906 P.2d at 668; *Swoboda*, 276 Mont. at 482, 918 P.2d at 298; *Kotwicki*, ¶ 16.

¶18 In considering the District Court's requirement that Bullplume pay the costs of his evaluations and treatment as conditions of his probation, we note preliminarily that it is well established a court does not have the power to impose a sentence unless authorized by a specific grant of statutory authority. *Melton*, ¶ 17; *State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66. A sentencing judge is specifically authorized to impose on a suspended sentence various restrictions or conditions that the judge considers necessary to obtain the objectives of rehabilitation and the protection of the victim and society. Section 46-18-202(1), MCA. These include restrictions on the offender's freedom of association and freedom of movement, plus "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(c), (d), (g), MCA (2011).[1] Similar authority is provided in § 46-18-201(4)(o), MCA (2009),[2] which authorizes a sentencing judge to impose on a suspended sentence any "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." We have emphasized that a sentencing judge's discretion under these statutes is broad and that our review is correspondingly deferential. *Melton*, ¶ 18; *State v. Zimmerman*, 2010 MT 44, ¶¶ 16-17, 355 Mont. 286, 228 P.3d 1109. As a general rule, we will affirm a condition of probation

---

[1] The law in effect at the time an offense is committed controls as to the possible sentence. *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297. In 2011, the Legislature added a new subsection to § 46-18-202(1), MCA, and provided an effective date of July 1, 2011. *See* Laws of Montana, 2011, ch. 419, §§ 29, 40. Since Bullplume's offense was committed between July 15 and August 1, 2011, we cite the 2011 version of § 46-18-202(1), MCA.

[2] Although the 2011 Legislature also amended § 46-18-201(4), MCA, that amendment was made effective on October 1, 2011. *See* Laws of Montana, 2011, ch. 318, § 8; § 1-2-201(1), MCA. Thus, we cite the 2009 version of this statute.

imposed pursuant to this statutory authority so long as the restriction or condition has some correlation or connection—i.e., nexus—to the underlying offense or to the offender. *Ashby*, ¶¶ 13-15; *Zimmerman*, ¶ 17. But if the condition is "overly broad or unduly punitive," or if the required nexus is "absent or exceedingly tenuous," we will reverse. *Melton*, ¶ 18; *Zimmerman*, ¶ 17.

¶19 It is pursuant to the foregoing statutory authority that the State argues the District Court could impose the requirement that Bullplume pay for his own evaluations and treatment. Bullplume maintains that the court exceeded its statutory authority by imposing such a requirement; however, because he did not object to this requirement, our review is limited under *Lenihan*, as clarified in *Kotwicki*, *Nelson*, and *Swoboda*, to determining whether, had the District Court been presented with the challenge Bullplume now makes, the court still could have imposed the requirement. In so doing, we consider whether a condition requiring Bullplume to pay for his evaluations and treatment might be reasonably related to the objective of rehabilitation, thus providing the statutory authority for imposing the condition and correspondingly requiring that any objections to the condition be made at sentencing. This consideration is different from, for example, the unauthorized imposition of a fine, which relates to the imposition of a penalty and is thus punitive, rather than rehabilitative, in nature. If a condition of probation is reasonably related to the objective of rehabilitation, and not prohibited by some other provision of law, then the sentencing court has acted within statutory parameters and there is no further review under *Lenihan*.

¶20 The District Court required Bullplume to obtain a chemical dependency evaluation, a mental health evaluation, and sexual offender treatment with a MSOTA qualified therapist. The court also required Bullplume to pay for these services. Had Bullplume made an objection at the time of sentencing, testimony may have been presented that, for example, payment for services by the offender has therapeutic value and is related to the offender's rehabilitation.[3] Had an objection been made at sentencing, the court may have considered whether Bullplume could have had services provided free of cost or on a sliding fee scale, based on his indigency and the service providers in his geographic area. Had an objection been made at sentencing, the court could have inquired of Bullplume and his counsel of other available options to address concerns of rehabilitation and public safety, such as treatment in an inpatient facility of the Department of Corrections which would be at no cost to Bullplume. Had the matter been properly raised and presented to the District Court, numerous areas could have been explored by the District Court and the parties to fully develop treatment options for Bullplume and how they were to be financed. A record would have been created and the matter would have been preserved for appeal, thereby enabling this Court to consider whether the condition was reasonably related to Bullplume's rehabilitation.

¶21 In sum, the State has pointed to plausible authority for the imposition of a condition requiring Bullplume to pay for the costs of his evaluations and treatment—

---

[3] Many of Montana's drug courts require payment for services based on the principle that the participant must be accountable for his or her treatment. *See e.g.* Shannon M. Carey, Juliette R. Mackin, & Michael W. Finigan, *What Works? The Ten Key Components of Drug Court: Research-Based Best Practices*, 8 Drug Ct. Rev. 6 (Natl. Drug Ct. Inst. 2012).

namely, § 46-18-201(4)(o), MCA (2009), and § 46-18-202(1)(g), MCA (2011). Due to Bullplume's failure to raise the issue in the District Court, however, the record before us contains no discussion, evidence, or consideration by the court regarding his paying for these services. On the basis of this silent record, and given the broad discretionary authority of the sentencing court to tailor sentences designed to rehabilitate the offender, we decline to address this issue any further. We conclude Bullplume is precluded from raising it based upon his failure to object to the condition at sentencing. *Kotwicki*, ¶ 21.

¶22 ***Issue Two. Whether the District Court abused its discretion in imposing conditions 26 through 40, which relate specifically to sexual offenders.***

¶23 Bullplume objected in the District Court to conditions 26 through 40, and his challenge has, therefore, been properly raised on appeal. Bullplume argues that there is an insufficient nexus between the sexual offender conditions and either himself or his underlying offense. He argues that his rape conviction occurred when he was 15 years old and involved a 25-year-old woman, that he has not committed a "crime of violence" or a "sex crime" for nearly 20 years, and that he has not committed any crimes involving children. Bullplume argues that, given the totality of these facts, any nexus to conditions 26 through 40 is too isolated or stale to serve as justification for their imposition.

¶24 We declined to adopt as a categorical rule the position that a sufficient nexus could be established to the original sexual offense when imposing conditions of sentence for the offense of failing to register. *Melton*, ¶ 20. We stated that "a passing, isolated, or stale instance of behavior or conduct is insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation." *Melton*, ¶ 20 (citing *Ashby*, ¶ 15, *State*

13

*v. Stiles*, 2008 MT 390, ¶ 16, 347 Mont. 95, 197 P.3d 966, and *State v. Jones*, 2008 MT 440, ¶¶ 22-23, 347 Mont. 512, 199 P.3d 216). Thus, in some instances, the original offense underlying the registration requirement may have relevance, but in other cases, the original offense may be too isolated or stale to serve as justification for imposing the challenged condition. *Melton*, ¶ 20. We stated that "[e]ach case must turn on its specific facts." *Melton*, ¶ 20.

¶25 Upon review of Bullplume's PSI and psychosexual evaluation, we conclude that the District Court did not abuse its discretion in imposing the conditions related to sexual offenders. In fact, Bullplume presents a compelling case for needing treatment. His history demonstrates an inability to remain law abiding or to conform his conduct to the demands of sexual offender laws. This, combined with Bullplume's significant chemical dependency concerns, leaves the public and society in danger should Bullplume not reform his behavior through treatment. Referring to Dr. Zook's observations that Bullplume "tends to be non-conforming, resentful of authority[,] . . . erratic and unpredictable," the PSI author noted that "[s]uch an assessment raises questions on how likely the Defendant will comply with any Court-ordered probation conditions." Given Bullplume's criminal history, moderate risk of reoffending, and excessive use of substances, Bullplume's only chance of succeeding in the community is through his participation in treatment services. Treatment similarly is the only hope of protecting the public from Bullplume's potential recidivism. Thus, imposition of conditions 26 through 40 has a sufficient nexus to Bullplume himself and establishes an offender nexus under

*Ashby*, ¶ 15. The District Court did not abuse its discretion in imposing these conditions related to sexual offenders as part of Bullplume's probation.

**CONCLUSION**

¶26    Based on the foregoing, we conclude that Bullplume has waived any objection to the requirement that he pay for the costs of his evaluations and treatment. We further conclude that imposition of the conditions relating to sexual offenders (conditions 26 through 40) was supported by a sufficient nexus to Bullplume himself. The District Court's sentencing order is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE