FILED

10/27/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 19-0518

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 269

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

MATTHEW GLEN HOTCHKISS,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause Nos. DC 18-238 and DC 19-49
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Kelly M. Driscoll, Driscoll Hathaway Law Group, Missoula, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

     Bill Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  September 16, 2020

Decided:  October 27, 2020

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 This is a consolidated appeal in which defendant Matthew Glen Hotchkiss appeals from the July 15, 2019 judgments of the Twenty-First Judicial District Court, Ravalli County, following his convictions of Sexual Assault, a Felony, in violation of § 45-5-502(1), (3), MCA, and Tampering with or Fabricating Physical Evidence, a Felony, in violation of § 45-7-207, MCA. We restate and address the following issues on appeal:

> *Issue One: Did the District Court err when it imposed sentencing conditions limiting the defendant's ability to possess a phone, a computer, or access to the internet?*

> *Issue Two: Did the District Court err when it ordered the defendant to pay the cost of his public defender without conducting a meaningful inquiry into his ability to pay such expense?*

¶2 We reverse and remand to the District Court to amend the conditions consistent with this Opinion and for a determination regarding Hotchkiss's ability to pay.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On November 16, 2018, Hotchkiss was charged with sexually assaulting his girlfriend's 13-year-old daughter. As a condition of his release on bail, Hotchkiss was ordered not to consume any alcohol or take any drugs. Hotchkiss was also ordered to participate in a pretrial supervision program and complete urine testing twice a week to screen for the presence of alcohol or drugs.

¶4 On March 18, 2019, while reporting to his pretrial supervision urine test, Hotchkiss was observed emptying a small amount of urine from a plastic container concealed in his waistband in the specimen cup. The plastic container was confiscated and Hotchkiss

2

provided an actual sample of his own urine, which tested positive for methamphetamine and amphetamine. Based on these events, Hotchkiss was charged with evidence tampering.

¶5 On May 2, 2019, Hotchkiss pled guilty to both the sexual assault charge and the tampering charge. Following Hotchkiss's guilty plea, the District Court ordered him to undergo a presentence investigation (PSI) and a psychosexual evaluation.

¶6 The psychosexual evaluation, filed May 17, 2019, recommended Hotchkiss be designated a low risk sexual offender based on him having "a low-moderate need for intense supervision in terms of sexual re-offense." The psychosexual evaluation also recommended Hotchkiss "enter into and complete sex offender treatment," and that "a rather aggressive approach to his treatment should initially be implemented . . . ." The psychosexual evaluation also recommended Hotchkiss "have no unsupervised contact with anyone under the age of consent until his treating professional and supervising officer agree that this restriction is no longer necessary." The psychosexual evaluation further noted that Hotchkiss denied participation in sexual behaviors such as obscene phone calls, phone sex, child pornography, or internet pornography.

¶7 The PSI, filed by the DOC's Adult Probation & Parole Bureau (P&P) on June 20, 2019, contained 48 recommended probation conditions, including conditions prohibiting Hotchkiss from having contact with "any individual under the age of 18 unless accompanied by an appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and is approved by the [P&P] Officer and sexual offender treatment provider," and requiring Hotchkiss to "seek and maintain employment . . . ." The PSI also included the following conditions regarding technology use:

3

36. The Defendant shall not have access to the internet without prior permission from the [P&P] Officer and sexual offender therapist, nor can the Defendant have on any computer he/she owns any software that is intended for data elimination, encryption or hiding data. If [i]nternet access is allowed, the Defendant must allow the Department to install rating control software and conduct random searches of the hard drive for pornography or other inappropriate material.

37. The Defendant shall not possess or use any computer or other device with access to any on-line computer service including, but not limited to 'Cloud' data storage, without the prior written approval of the [P&P] Officer. The Defendant shall allow the [P&P] Officer to make unannounced examinations of his/her computer, hardware, and software, which may include the retrieval and copying of all data from his/her computer and computing and data storage devices. The Defendant shall allow the [P&P] Officer to install software to restrict the Defendant's computer access or to monitor the Defendant's computer access. The Defendant shall not possess encryption or steganography software. The Defendant shall not utilize software designed to eliminate traces of internet activity. The Defendant shall provide records of all passwords, internet service, and user identifications (both past and present) to the [P&P] Officer and immediately report changes. The [D]efendant shall sign releases to allow the [P&P] Officer to access phone, wireless, internet, and utility records.

.   .   .

44. The Defendant shall not have a cell phone, or such other technology/device with photo, video, or [i]nternet capabilities, without prior permission of [P&P] Officer. If cell phone use is allowed, all bills and records shall be made available to the [P&P] Officer.

The PSI noted Hotchkiss's criminal history which, while extensive, did not involve sexual offenses or the use of technology in the commission of an offense.

¶8 On June 20, 2019, the District Court conducted a sentencing hearing on both charges. Prior to imposition of sentence, defense counsel requested the District Court strike conditions 36, 37, and 44, arguing they had no nexus to Hotchkiss or his offenses and were unreasonably burdensome in that they limited Hotchkiss's ability to apply for jobs or attend

4

online school.  Defense counsel also requested the District Court waive imposition of all fees, including the public defender fee.  Defense counsel argued that "any money [Hotchkiss] is capable of earning upon being released would be better suited to getting the treatment that he's going to need, specifically follow-up treatment and potentially sex offender treatment."

¶9     The District Court questioned Hotchkiss about his employment, asking what he did for work prior to his incarceration, and whether it was work to which he planned to return.  Hotchkiss responded he was previously employed locally as a roofer and would "[m]ost likely" return to that type of work upon release.

¶10    On the sexual assault charge, the District Court sentenced Hotchkiss to the Montana Department of Corrections (DOC) for a 15-year commitment with 10 years suspended; imposed a $5,000 fine, all suspended; and imposed all statutory surcharges and fees, including repayment of public defender fees.  On the evidence tampering charge, the District Court sentenced Hotchkiss to a 10-year DOC commitment, all suspended, to run concurrent with his term imposed for the sexual assault offense.  The District Court waived payment of the fine for the tampering charge, but imposed all statutory surcharges.  The District Court also imposed PSI-recommended conditions 36, 37, and 44 regarding technology use.

## STANDARDS OF REVIEW

¶11    A condition imposed in a criminal sentence of incarceration for longer than one year is reviewed first for its legality.  *State v. Nauman*, 2014 MT 248, ¶ 8, 376 Mont. 326, 334 P.3d 368 (citing *State v. Holt*, 2011 MT 42, ¶ 7, 359 Mont. 308, 249 P.3d 470);

5

*City of Billings v. Barth*, 2017 MT 56, ¶ 8, 387 Mont. 32, 390 P.3d 951. "A condition is illegal when there exists no statutory authority to impose it, where the condition exceeds the limits of the relevant sentencing statute, or where the court fails to 'adhere to the affirmative mandates of the applicable sentencing statutes.'" *City of Billings*, ¶ 8.

¶12 If we determine the sentence condition is legal, we next review the reasonableness of conditions or restrictions imposed on the sentence for an abuse of discretion. *Nauman*, ¶ 8 (citing *State v. Ashby*, 2008 MT 83, ¶ 8, 342 Mont. 187, 179 P.3d 1164). An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. Hernandez*, 2009 MT 341, ¶ 7, 353 Mont. 111, 220 P.3d 25.

¶13 A district court's determination of a defendant's ability to pay an imposed fine, fee, cost, or other charge is "essentially a finding of fact that this Court will reverse only if it is clearly erroneous." *State v. Reynolds*, 2017 MT 317, ¶ 16, 390 Mont. 58, 408 P.3d 503 (quoting *State v. Holt*, 2006 MT 151, ¶ 23, 332 Mont. 426, 139 P.3d 819). A finding of fact is clearly erroneous if it is not supported by substantial credible evidence, if the lower court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been made. *Reynolds*, ¶ 16.

**DISCUSSION**

¶14 *Issue One: Did the District Court err when it imposed sentencing conditions limiting the defendant's ability to possess a phone, a computer, or access to the internet?*

¶15 Under § 46-18-201(4), MCA, a district court may impose "any reasonable restrictions or conditions" on a suspended sentence. A district court may also impose other

restrictions or conditions considered "necessary to obtain the objectives of rehabilitation and the protection of the victim and society . . . ." Section 46-18-202(1), MCA. Before a sentencing court imposes a condition on a defendant's suspended sentence, the court must find "some correlation or connection—i.e., nexus—to the underlying offense or to the offender himself . . . ." *State v. Melton*, 2012 MT 84, ¶ 18, 364 Mont. 482, 276 P.3d 900. A condition will be reversed if "the restriction or condition at issue is 'overly broad or unduly punitive,' or if the required nexus is 'absent or exceedingly tenuous . . . .'" *Melton*, ¶ 18.

¶16 Hotchkiss argues the District Court erred in imposing Conditions 36, 37, and 44 because the conditions were overbroad for having no nexus to the underlying offense or Hotchkiss's criminal history. The State responds that the technology use conditions are connected to the circumstances of Hotchkiss's current sexual offense against a minor and are necessary for monitoring his access to anyone under the age of consent.

¶17 "The basic purposes of probation and its corresponding conditions are to provide an offender the chance to rehabilitate outside of the prison setting and to provide the community protection from future criminal activity." *State v. Conley*, 2018 MT 83, ¶ 18, 391 Mont. 164, 415 P.3d 473. While we do not accept Hotchkiss's argument that the conditions should be stricken in their entirety, we likewise are not convinced that the full extent of Conditions 36, 37, and 44 are necessary to effectively supervise Hotchkiss on conditional release.

¶18 The conditions as currently imposed completely prohibit Hotchkiss from accessing the internet or possessing certain electronic devices, including a smart phone, without first

7

obtaining permission from his probation officer. The conditions also specify that if access is granted, Hotchkiss must provide records of all his passwords. The broad scope of these conditions goes beyond what is reasonably related to Hotchkiss's criminal history, and the offense of which he was convicted, which was not committed using any type of electronic device. The conditions also fail to consider the multiple legitimate purposes for internet usage. Imposing this restriction on Hotchkiss also may impair his ability to potentially carry out the other terms of his conditions requiring him to seek and maintain employment.

¶19 Though we determine Conditions 36, 37, and 44 are overbroad insofar as they completely restrict Hotchkiss's ability to *access* the internet and certain electronic devices, we recognize his *usage* of the internet and electronic devices warrant appropriate monitoring on conditional release, given the nature of his offense and the other conditions imposed. The imposition of restrictions or conditions on a deferred or suspended sentence functions as a "contract between the court and the probationer, eliminating certain privacy expectations; the probationer is aware that his activities will be scrutinized." *Conley*, ¶ 18. A probationer has "conditioned liberty and, therefore, ha[s] a reduced privacy interest." *State v. Roper*, 2001 MT 96, ¶ 12, 305 Mont. 212, 26 P.3d 741. As such, it is reasonable to prohibit a sexual offender like Hotchkiss from installing or utilizing software on his electronic devices intended for eliminating or concealing data or traces of internet activity, including encryption or steganography software. It is also reasonable to require Hotchkiss to provide P&P access to install rating control software or other software to restrict or monitor his internet access, conduct random hard drive searches for pornography or other inappropriate material, conduct unannounced examinations of Hotchkiss's computer,

8

hardware, and software, and retrieve or copy all data from his computer and data storage devices if deemed to be reasonably necessary. To further allow adequate supervising, P&P should be granted access to Hotchkiss's past and present user identifications, and phone, wireless, internet, and utility records. All cell phone bills and records should also be made available to P&P.

¶20 Justice Sandefur's Dissent takes issue with the restrictions, even as modified, arguing that the only justification is the unsupported, fear-based presumption that viewing pornography or other related material "necessarily increases the risk that every single person convicted of a sexual offense will commit another . . . ." Dissent, ¶ 34. The Dissent's position fails to consider the conditions that Hotchkiss does not challenge, specifically Conditions 34 and 35, of which the challenged conditions ensure compliance. Condition 34 prohibits Hotchkiss from

> access[ing] or hav[ing] in [his] possession or under [his] control any material that describes or depicts human nudity, the exploitation of children, consensual sexual acts, non-consensual sexual acts, sexual acts involving force or violence, including but not limited to computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc. without prior written approval of the [P&P] Officer and therapist.

Condition 35 prohibits Hotchkiss from "view[ing] television shows or motion pictures geared toward [his] sexual offending cycle, or as a stimulus to arouse deviant thoughts or fantasies . . . ." This prohibition would include television shows or motion pictures that are available on myriad streaming platforms accessible through the internet via computer or smart phone. As modified, the challenged conditions authorize P&P simply to ensure compliance with Conditions 34 and 35.

9

¶21 As modified, Conditions 36, 37, and 44 allow Hotchkiss to access the internet for legitimate purposes, while also allowing P&P the ability to ensure Hotchkiss's compliance with Conditions 34 and 35—conditions which Hotchkiss does not challenge. To simply strike these conditions in their entirety would be akin to prohibiting a probationer from consuming drugs or alcohol, but not allowing P&P to conduct random tests to ensure the probationer's compliance with that prohibition. While the conditions no doubt intrude on Hotchkiss's privacy, he is aware that, as a probationer, his privacy expectations are constrained, and his activities are subject to scrutiny. *Conley*, ¶ 18; *Roper*, ¶ 12.

¶22 Conditions 36, 37, and 44, as imposed by the District Court, are overbroad. However, we reject Hotchkiss's argument that they should be stricken in their entirety. We reverse the District Court's imposition of these conditions and remand with instructions to amend the conditions consistent with this Opinion.

¶23 *Issue Two: Did the District Court err when it ordered the defendant to pay the cost of his public defender without conducting a meaningful inquiry into his ability to pay such expense?*

¶24 A district court may require that a convicted defendant pay the costs incurred by his assigned public defender as a condition of a sentence. Section 46-8-113(1), MCA. As with other fines, fees, or charges, the court must first determine whether the defendant has the ability to pay the public defender fee. Section 46-8-113(3), MCA; *Reynolds*, ¶ 20. In reaching its determination, the court must "scrupulously and meticulously" inquire as to the defendant's ability to pay, *State v. Gable*, 2015 MT 200, ¶ 22, 380 Mont. 101, 354 P.3d 566, "tak[ing] into account the financial resources of the defendant and the nature of the burden that payment of costs will impose." Section 46-8-113(4), MCA. "The court

10

may find that the defendant is able to pay only a portion of the costs assessed." Section 46-8-113(4), MCA.

¶25 Prior to imposing the public defender fee, the District Court asked Hotchkiss two questions regarding his financial condition: what he did for work prior to his incarceration, and whether it was work in which he planned to return upon his release. The District Court never examined this fee in light of Hotchkiss's other financial obligations, whether this type of work provided Hotchkiss with the financial ability to pay the fee, whether he had other assets he could use to pay the fee, or if the fee would cause any present or future financial hardship on Hotchkiss. The District Court's brief examination into Hotchkiss's financial condition falls below the requisite "scrupulous and meticulous" inquiry. *See* § 46-8-113(4), MCA; *Gable*, ¶ 22. We therefore reverse the District Court's imposition of the public defender fee and remand for a determination regarding Hotchkiss's ability to pay.

**CONCLUSION**

¶26 We reverse the District Court's imposition of Conditions 36, 37, and 44 on Hotchkiss's sentence, and remand with instructions to amend the conditions consistent with this Opinion. We reverse the District Court's determination that Hotchkiss must pay the costs of his public defender and remand for a determination of his ability to pay.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH

Justice Jim Rice, concurring in part and dissenting in part.

11

¶27    I dissent from the reversal of the challenged sentencing conditions under Issue One.

¶28    Hotchkiss was convicted of felony sexual assault for taking advantage of a 13-year-old girl while she was sleeping in bed, after removing a seven-year-old boy from the bed and surreptitiously taking his place on the bed beside her. He was also convicted of tampering with evidence for concealing a plastic container in an attempt to submit a deceptive urine sample while on pre-trial release in this case. Hotchkiss had 10 prior criminal convictions in the 19 years before the charges were filed in this case, five other charges that did not result in convictions, and three charges that were pending during this proceeding. In addition to the pervasiveness of his criminal behavior reflected in his record, the most relevant past conviction for purposes of the issue here is his 2004 Idaho conviction for providing false information to an officer.

¶29    The risk assessment of Hotchkiss performed during the PSI preparation, using a validated risk assessment tool, resulted in a "High" risk rating, meaning that Hotchkiss "[h]as most, if not all, major criminogenic needs; many needs are chronic, severe, and longstanding; requires most intensive interventions to support behavior change." While intended to measure risk of recidivism generally, and not the risk of sexual offense recidivism specifically, this risk assessment nonetheless, as explained in the PSI, "can still identify areas of needs that should be addressed as part of a case plan while the Defendant is under the supervision of the DOC." The PSI stated Hotchkiss has "found himself on a path of continued law violations[.]" It reported that Hotchkiss' behavior while on pre-trial supervision spoke of "dishonesty and an unwillingness to follow rules imposed on him."

12

¶30    The PSI incorporated the mental health and psychosexual evaluation performed by

Dr. Page.  Hotchkiss' MCMI-III profile indicated he exhibited tendencies "to charm and

exploit others and to extract special recognition and consideration without assuming

reciprocal responsibility."  The profile recognized "questions of personal integrity," such

as "cleverly circumventing social convention and beguiling and seducing others," such that

"a pervasively deficient social conscience" was indicated.  The report stated that Hotchkiss

was "in denial of the allegations" of the sexual assault charge.  Describing Hotchkiss as

"[u]ntroubled by conscience and needing to nourish the whims of an overinflated ego," the

report said that he was "disposed to fabricate stories," and concluded:

> [D]isplaying indifference to the truth, Mr. Hotchkiss successfully schemes
> beneath a veneer of civility. A guiding principle for him is that of outwitting
> others and controlling or exploiting them before they can do the same to him.
> He exhibits a readiness to engage in deception and fraud should they be
> necessary. If he is unsuccessful in channeling his impulses, he becomes
> frustrated and may begin to engage in risky acts that could result in legal
> difficulties.

As a consequence, Dr. Page recommended, and the Court notes, that while Hotchkiss was

believed to be amenable to community treatment, "a rather aggressive approach" to

Hotchkiss' sex offender treatment should be implemented, including "no unsupervised

contact with anyone under the age of consent until his treating professional and supervising

officer agree that this restriction is no longer necessary."

¶31    In the context of the reports generated in this case, and Hotchkiss' personal history,

the PSI recommended, and the District Court imposed,  sentencing conditions that require

approval and supervision of Hotchkiss' access to the internet—importantly, not an absolute

prohibition upon such access.  The connections, or "nexus," of these conditions are these:

13

Hotchkiss is sex offender who victimized a child, lacks a social conscience, and is a serial deceiver. As far back as 2004, he was convicted of providing false information to law enforcement. Hotchkiss must be subject to an "aggressive" treatment plan, because he requires the "most intensive interventions to support behavior change." He must be prohibited from having any *contact* with children and frequenting any place where children may be found, unless under supervision or upon approval. The Court can take judicial notice, or simply review our many cases, which unquestionably demonstrate where children, in today's technological society, may be found and contacted: the internet. It is just as important to the protection of society that Hotchkiss' presence on the internet be supervised or approved, as it is his physical presence on a schoolground. Indeed, it is more important; the inherent concealment in the virtual world often permits deceptiveness to be parlayed into abuse faster than by physical presence, especially by someone who lacks a social conscience and is inclined to "beguiling and seducing others." If that were not enough, Condition #34 of Hotchkiss' sentence, not challenged on appeal, provides that he "shall not access or have in his/her possession or under his/her control any material that describes or depicts human nudity, the exploitation of children, consensual sexual acts, non-consensual sexual acts, sexual acts involving force or violence. . . ." Unsupervised, the internet provides ready access to such materials, which Hotchkiss must avoid as part of his sexual offender treatment. The precautions required to ensure his proper, approved access to the internet are reasonable.

¶32 The law clearly authorizes the conditions imposed here. The nexus requirement is to be applied in recognition that "a sentencing judge's discretion . . . is broad and that our

14

review is correspondingly deferential." *State v. Robertson*, 2015 MT 266, ¶ 16, 381 Mont. 75, 364 P.3d 580 (quoting *State v. Bullplume*, 2013 MT 169, ¶ 18, 370 Mont. 453, 305 P.3d 753). We will affirm a condition of probation "so long as the restriction or condition has some correlation or connection—i.e., nexus—to the underlying offense or to the offender[,]" and reverse only if the condition is "overly broad or unduly punitive, or if the required nexus is absent or exceedingly tenuous." *Robertson*, ¶ 16 (internal quotations omitted). There is nothing "overly broad" or "exceedingly tenuous" about the nexus of the challenged conditions here. In my view, the Court's splicing of conditions between the "access" and the "usage" of the internet/electronic devices, Opinion, ¶ 19, runs counter to the District Court's broad sentencing authority, which was reasonably applied in Hotchkiss' circumstances.

¶33    I would affirm the sentencing conditions as imposed by the District Court.


/S/ JIM RICE


Justice Beth Baker joins in the concurring and dissenting Opinion of Justice Rice.


/S/ BETH BAKER


Justice Dirk Sandefur, concurring in part, dissenting in part.

¶34    I concur in the Court's opinion except for its affirmation of the balance of court-imposed probation conditions 36-37 and 44 subjecting Hotchkiss to State monitoring of his internet usage, electronic devices, and other related personal information. Here, without

15

articulating any particular nexus to Hotchkiss or the circumstances of his offenses, the Court conclusorily states that "we recognize [that Hotchkiss's future] usage of the internet and electronic devices warrant appropriate monitoring . . . *given the nature of his offense and the other conditions imposed*." Opinion, ¶ 19 (emphasis added). It then goes on to further cursorily conclude that it is thus "reasonable" for the State to monitor his internet usage, related electronic devices, and all "past and present [internet] user identifications, and phone, wireless, internet, and utility records," including "[a]ll cell phone bills and records," in order to allow the State to "search[] for pornography or other inappropriate material" while he is on probation. Opinion, ¶ 19.

¶35 However, the manifest legal problem is that, regardless of the broad discretion of the sentencing court to impose conditions of probation, and a probationer's concomitant reduced expectation of privacy, probation conditions are nonetheless lawful only if a substantial nexus exists between those conditions and either the circumstances of the subject offense or the personal circumstances of the defendant. *State v. Melton*, 2012 MT 84, ¶ 18, 364 Mont. 482, 276 P.3d 900. Neither the State, the District Court, nor this Court has explained what the particular justifying nexus is between the circumstances of Hotchkiss's offenses (Sexual Assault of his girlfriend's 13-year-old daughter and related Evidence Tampering) and the breathtakingly broad government intrusion into his individual privacy to "search[] for pornography or other inappropriate material." Conspicuously missing is any particular record or other fact-based reason to believe that pornography or other undefined "inappropriate material" had any even tangential or coincidental involvement, much a less a causative influence, in Hotchkiss's criminal

16

behavior, the circumstances of his offenses, or any other circumstance personal to him. In the glaring absence of that critical factual missing link, the only and manifest justification for the invasive probation conditions at issue is the wholly *unsupported presumption and fear* that the viewing of pornography or other "inappropriate material" necessarily increases the risk that every single person convicted of a sexual offense will commit another, regardless of the particular circumstances of the prior offenses or the offender's individual characteristics and circumstances.

¶36 In a thinly-veiled attempt to gloss-over the absence of a sufficient factual nexus to support the conditions at issue, the Court references "the other conditions imposed." However, mere cross-reference or linkage to other probation conditions is insufficient alone to justify conditions that in the first instance manifestly lack a sufficient nexus to the circumstances of the defendant or the offense.

¶37 I certainly understand the menace that sex offenders pose in our society, and the resulting commonplace fear, disdain, and presumptions associated with them. However, there is no general exception for sex offenders under Montana's unique constitutional right to privacy, or our clear and unequivocal minimum legal standards governing probation conditions. Just like every other class of criminal offenders, all sex offenders, and the underlying causes of their criminal behavior, are not the same. It is simply unlawful for courts, including this Court, to allow unsupported fear, disdain, and general presumptions to substitute for the particularized factual nexus we otherwise uniformly require to justify probation conditions in every other type of criminal case. Thus, while I concur in the

17

balance of the Court's opinion, I dissent from its affirmation of the invasive internet usage conditions imposed in this case in disregard of governing law.

/S/ DIRK M. SANDEFUR

Justices Ingrid Gustafson and Laurie McKinnon join in the concurring and dissenting Opinion of Justice Sandefur.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON