FILED

12/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0041

DA 20-0041

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 312

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ERIC D. YEATON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-19-16
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

            Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  September 1, 2021

Decided:  December 14, 2021

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Eric D. Yeaton (Yeaton) appeals a November 22, 2019 judgment and sentence from the Nineteenth Judicial District Court in Lincoln County. Yeaton pleaded guilty to felony operation of a noncommercial vehicle by a person with a blood alcohol concentration (BAC) of .08 or more, in violation of §§ 61-8-406 and -731, MCA. The District Court imposed a five-year sentence of imprisonment with two years suspended and fees and fines totaling $5560, as well as an order to pay imprisonment, probation, and alcohol treatment costs "if financially able." These latter, financial aspects of the sentence are the subject of his appeal.

¶2    We restate the issues on appeal as follows:

> *Issue One: Is it legal under federal and state law to order fines, fees, and surcharges against a defendant whose current income is only social security benefits?*
>
> *Issue Two: Did the District Court improperly fail to inquire into Yeaton's ability to pay the fines, fees, and surcharges ordered?*
>
> *Issue Three: Did the District Court err by ordering the payment of imprisonment, probation, and alcohol treatment costs "if financially able," with financial ability to be determined at a time later than sentencing?*

¶3    We affirm on Issues One and Three and reverse and remand on some of the costs in Issue Two.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Yeaton was arrested following a traffic stop on January 20, 2019. A blood test showed him to have been driving with a BAC greater than .08, a violation of § 61-8-406, MCA. Yeaton had at least four prior intoxicated driving convictions, and he had attended

2

a residential alcohol treatment program pursuant to a prior conviction, as provided for in § 61-8-731(2), MCA. These facts subject Yeaton to the felony punishment rules and probationary conditions set out in § 61-8-731(3)-(4), MCA.

¶5 Yeaton pleaded guilty to the BAC offense, and the Lincoln County District Court held a sentencing hearing. At the sentencing hearing, the parties and the court discussed Yeaton's presentence investigation report (PSI) and the financial aspects of the sentencing recommendations contained in the PSI, most of which the District Court adopted in its judgment. Yeaton offered the District Court several corrections to the PSI on file, which was drafted by referencing an older PSI of Yeaton's. In addition to clarifying some other details, Yeaton noted that his assets and debts in the new PSI should be listed as "none" rather than "unknown." Yeaton's attorney then raised with the District Court two issues from the PSI's numbered recommendations.

¶6 The first regarded fees and other financial charges. The District Court agreed to drop some of the recommended fees but kept several: a $5000 fine,[1] a $500 administrative surcharge,[2] a $50 DUI-specific surcharge,[3] and a $10 court information technology fee.[4] Yeaton objected to these fines and fees on the grounds that he could not afford them and that they could not be levied against a defendant whose sole income source was social

---

[1] Under § 61-8-731(3), MCA.

[2] Under § 46-18-236(1)(b), MCA.

[3] Under § 46-18-236(1)(c), MCA.

[4] Under § 3-1-317, MCA.

security disability payments. On the social security point, Yeaton cited *State v. Eaton*, 2004 MT 283, 323 Mont. 287, 99 P.3d 661, during the sentencing hearing.

¶7 Yeaton's second argument regarded financial charges for the costs of chemical dependency evaluation, aftercare treatment during probation, and imprisonment. The PSI's recommended provision stated that the defendant, "if financially able, as a condition of probation, shall pay for the cost of imprisonment, probation, and alcohol treatment . . . ." The District Court adopted this language in its judgment and sentence. Yeaton argues on appeal that this provision violates statutes and this Court's precedents requiring district court findings about ability to pay.

**STANDARD OF REVIEW**

¶8 This Court reviews sentencing conditions, fines, and fees "first for legality, then for abuse of discretion as to the condition's reasonableness under the facts of the case." *State v. Ingram*, 2020 MT 327, ¶ 8, 402 Mont. 374, 478 P.3d 799 (citing *State v. Daricek*, 2018 MT 31, ¶ 7, 390 Mont. 273, 412 P.3d 1044). We determine legality by considering only "whether the sentence falls within the statutory parameters, whether the district court had statutory authority to impose the sentence, and whether the district court followed the affirmative mandates of the applicable sentencing statutes." *Ingram*, ¶ 8 (citing *State v. Himes*, 2015 MT 91, ¶ 22, 378 Mont. 419, 345 P.3d 297).

4

## DISCUSSION

¶9     *Issue One: Is it legal under federal and state law to order fines, fees, and surcharges against a defendant whose current income is only social security benefits?*

¶10    Shortly after Yeaton filed his first brief in this appeal, we issued our decision in *State v. Ingram*, 2020 MT 327, 402 Mont. 374, 478 P.3d 799. *Ingram* resolved the exact issue that Yeaton raises regarding social security.

¶11    In *Eaton*, we held that a district court may not levy a financial charge calculated as a percentage of a defendant's net income including social security benefits. *Eaton*, ¶¶ 23-27. This violates a federal law that protects such payments from garnishment and other "legal process." *See* 42 U.S.C. § 407(a). However, in *Ingram*, we considered a mandatory fine issued with no reference to the income source from which it would be paid. We recognized that income sources can change over time and made a distinction between creating a debt and requiring social security benefits be used to satisfy a debt. *Ingram*, ¶¶ 11-12. The former does not violate federal law, while the latter does.

¶12    *Ingram* thus makes clear that the fines, fees, and surcharges the District Court included in Yeaton's sentence are legal. The $5000 fine, as discussed below, was a statutory minimum. The $500 fee was a percentage of the fine, as directed by statute. And the $50 and $10 charges were flat statutory rates. None of these charges, therefore, were made in reference to Yeaton's social security income or required to be paid from that

5

income source.[1]  The State may not collect from Yeaton's social security benefits to satisfy these debts, but it is permitted to impose them.

¶13  *Issue Two: Did the District Court improperly fail to inquire into Yeaton's ability to pay the fines, fees, and surcharges ordered?*

¶14  Yeaton also raised arguments about his inability to afford the $5560 of fines, fees, and surcharges ordered by the District Court.  These costs fit into two categories: a $5000 fine issued pursuant to § 61-8-731(3), MCA, and $560 in fees and surcharges pursuant to §§ 46-18-236 and 3-1-317, MCA.

¶15  The legality of the $5000 fine in Yeaton's judgment is made clear by *State v. Mingus*, 2004 MT 24, 319 Mont. 349, 84 P.3d 658.  In *Mingus*, we held that statutory provisions that require an inquiry into ability to pay—in §§ 46-18-231 and -232, MCA—do not apply to statutorily mandated fines.  *Mingus*, ¶ 15.  Yeaton acknowledged in District Court that the $5000 fine was mandatory.  Yeaton raises a new argument on appeal that the fine might be discretionary, but even if he were able to show it was, such an issue creates an "objectionable sentence, not an illegal sentence."  *State v. Kotwicki*, 2007 MT 17, ¶ 21, 335 Mont. 344, 151 P.3d 892.  We review sentencing decisions for legality, and Yeaton's $5000 fine is within statutory parameters.  *Daricek*, ¶ 7; § 61-8-731(3), MCA.

---

[1] The Dissent characterizes such charges as "at minimum, an indirect attempt to target [] protected benefits" and argues that they therefore should be unlawful.  Dissent, ¶ 30.  This reiterates the issue that we previously addressed and decided in *Ingram*.  Our task in this case becomes to apply the law as previously settled, which warrants the conclusion that Yeaton's fines and fees do not on their own violate federal social security protections.

Because Yeaton failed to object to the fine on these grounds in District Court, he waived this issue and cannot raise it now on appeal.[1] *Kotwicki*, ¶ 22.

¶16    However, the $560 in fees and surcharges falls under different rules than the larger mandatory fine from the DUI statutes. These fees and surcharges are subject to the ability-to-pay inquiry required by §§ 46-18-232 and -236(2), MCA. Again, a district court's failure to make the inquiry renders a sentence only objectionable, not illegal—but here, Yeaton sufficiently objected regarding his ability to afford these fees and surcharges. When the District Court asked Yeaton's attorney whether any provisions in the PSI should be rejected, Yeaton's attorney told the District Court that "[o]ne of the things that Mr. Yeaton struggles with is obviously paying for things . . . [s]o, obviously, all of the fines and fees I am asking to be waived . . . he gets social security and he cannot afford those." The State colors this objection as referring only to the *Eaton* argument addressed above, but we view the attorney's objection as sufficient to invoke the protections of §§ 48-18-232 and -236(2), MCA. The attorney specified that the basis for his objection to these provisions was Yeaton's ability to afford them. *See Pumphrey v. Empire Lath & Plaster*, 2006 MT 99, ¶ 30, 332 Mont. 116, 135 P.3d 797 (noting an objection is sufficient if it "specifies the reason for disagreement"); *State v. Castle*, 1999 MT 141, ¶ 11, 295 Mont. 1,

---

[1] The Dissent would permit Yeaton's general affordability objection to preserve such issues as the textual mandatory/discretionary argument Yeaton raised for the first time on appeal. Dissent, ¶¶ 33-38. However, Yeaton's counsel and the District Court had a direct exchange about the $5000 fine in which the District Court asked for confirmation that the fine was mandatory and Yeaton's counsel responded "yes." Yeaton's counsel proceeded to object to that fine as a violation of federal social security protections specifically. We view the totality of the exchange about fines and fees as a sufficient objection to the District Court's ordering of discretionary fines subject to §§ 48-18-232 and -236(2), MCA—the $560 that we reverse—but not a sufficient objection regarding the interpretation of a statute conceded by Yeaton to impose a mandatory fine.

982 P.2d 1035 (noting that under evidentiary rules, objections can be sufficient if the "specific ground is apparent from the context").

¶17 Here, the District Court addressed Yeaton's objection to these fees and surcharges at the same time as it considered the mandatory fine and the social security issue. The District Court then treated the mandatory fine the same as the fees and surcharges when it imposed all these costs without further discussion of Yeaton's financial resources. However, as noted, the fees and surcharges are subject to more strenuous inquiry rules, and the District Court did not make the "serious inquiry or separate determination" that we have required under the statutes that apply to these costs. *State v. McLeod*, 2002 MT 348, ¶ 34, 313 Mont. 358, 61 P.3d 126; *Ingram*, ¶ 16. We therefore reverse and remand the $560 in financial penalties with instruction to conduct further proceedings in compliance with §§ 48-18-232 and -236(2), MCA.

¶18 *Issue Three: Did the District Court err by ordering the payment of imprisonment, probation, and alcohol treatment costs "if financially able," with financial ability to be determined at a time later than sentencing?*

¶19 When a person is convicted for at least the fourth time for driving with excessive BAC under § 61-8-406, MCA, another provision of Montana law applies: § 61-8-731(4)(b), MCA.[1] This second law requires the convicting district court to order "a person who is financially able to pay the costs of imprisonment, probation, and alcohol treatment[.]"

---

[1] The 2021 Montana Legislature made amendments that rearranged some of the statute's numbering. At the time of Yeaton's sentencing and at the time we decided *Ingram* and *Daricek*, the relevant provision was at § 61-8-731(4)(b), MCA, which is the number used throughout this Opinion. In 2004, at the time we decided *Mingus*, the provision was at § 61-8-731(3)(b), MCA; the text of that Opinion cites that number, but for continuity we cite the provision as applicable to Yeaton, § 61-8-731(4)(b), MCA, throughout.

¶20    At sentencing, some district courts have taken to applying the plain text of that statute more or less verbatim. They order the fines, as required, with the conditional language "if financially able" attached. This practice effectively defers to the Department of Corrections (DOC) a later determination about whether the defendant will be able to cover the costs.

¶21    We have condoned this practice before. Unlike the fees and surcharges laws addressed above, which specify several factors the district court "shall take into account," this law simply makes the costs mandatory but conditional. *See Daricek*, ¶ 10 n.1. Furthermore, we have observed that the costs incurred through imprisonment, probation, and treatment are not fully known until after those stages are complete. It is DOC that ultimately assesses these costs "in accord with the conditions set by a sentencing judge." *Daricek*, ¶ 12 (quoting § 46-23-1011(1), MCA). Thus, the conditional language in § 61-8-731(4)(b), MCA, was "a determination directed to the Department of Corrections[.]" *Ingram*, ¶ 14.

¶22    The District Court included the conditional "if financially able" language in Yeaton's sentencing order on the imprisonment, probation, and treatment costs. However, despite our earlier acceptance of this practice, Yeaton points to our discussions in *Mingus* and *Daricek* and argues that the District Court should also have explored his likelihood of affording these costs before conditionally ordering them.

¶23    In *Mingus*, the district court had placed the conditional language in its written sentencing order, but when it orally pronounced the sentence in the courtroom, it had ordered the costs *without* providing the condition and while also observing that the

9

defendant would be unlikely to be able to pay them. *Mingus*, ¶¶ 6, 20. Only the oral sentence controlled our judgment in that case, and we held that the unconditional order, combined with an observation of a likely *inability* to pay, ran afoul of § 61-8-731(4)(b), MCA. *Mingus*, ¶¶ 20-22.

¶24 In *Daricek*, the district court's order had included the "if financially able" condition, which we concluded "complied with the plain language of § 61-8-731(4)(b), MCA." *Daricek*, ¶ 14. In contrast with the comment about likely inability to pay in *Mingus*, the district court in *Daricek* had observed that the defendant was "fit and able to work" and therefore probably could pay the costs. We held that this was sufficient to satisfy our holding in *Mingus* that the district court needed to make "specific findings." *Daricek*, ¶¶ 17-18.

¶25 Here, Yeaton argues that the District Court acted more like in *Mingus* than in *Daricek*. The District Court looked at Yeaton's PSI and had a brief discussion with the parties about his ability to pay the various fines, fees, and costs, as we have addressed above. Regarding the costs in § 61-8-731(4)(b), MCA, Yeaton's attorney advocated that they be treated as discretionary. The District Court, however, disagreed and said it would let DOC decide, by using the "if financially able" language. Unlike in *Daricek*, the District Court did not opine on Yeaton's employability. Yeaton argues that without such a finding, his costs should be remanded like we remanded those in *Mingus*.

¶26 However, the District Court comported with the plain holdings of *Daricek* and *Ingram* that providing the conditional language complies with § 61-8-731(4)(b), MCA. In *Ingram*, we also affirmed a sentencing order with this same language and no comment on

10

employability, and we noted that the district court "properly deferred" to DOC. We reiterated that it is DOC, "not the sentencing court, which assesses the defendant's ability to underwrite the costs associated with his or her sentence," viewing this process as sufficient to ensure that defendants will not be obligated to pay these costs if they are financially unable. *Ingram*, ¶ 15. The District Court's order here was structured just like the one we affirmed in *Ingram*, and it is easily distinguishable from the one in *Mingus* that was issued unconditionally. Therefore, the sentence was legal, and the District Court did not err in its order.

## CONCLUSION

¶27 The fines, fees, and surcharges in the District Court's sentence did not violate federal law protecting social security income. The District Court acted legally and within its discretion to condition payment of imprisonment, probation, and treatment costs on a later determination of Yeaton's ability to pay. The District Court also acted legally in imposing the $5000 fine because it was mandatory. However, the District Court did not make the requisite separate inquiry into Yeaton's ability to pay the $560 in fees and surcharges, and Yeaton sufficiently objected about his ability to afford them. We thus reverse and remand on the $560 in fees and surcharges with instructions to conduct the inquiry required by §§ 48-18-232 and -236(2), MCA.

¶28 Affirmed in part and reversed in part with remand for further proceedings.


/S/ MIKE McGRATH

We Concur:

11

/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶29     I concur with the Court's analysis of Yeaton's $560 in surcharges and fees under Issue 2.  However, I dissent as to its conclusions on Issue 1, Yeaton's $5,000 fine under Issue 2, and Issue 3.  While I admire the Court's attempt to clarify our jurisprudence in this area of law, I disagree with its conclusions and analysis.

¶30     With respect to Issue 1, I would conclude the trial court's imposition of a $5,000 fine under § 61-8-731(3), MCA, when Yeaton's only source of income was protected Social Security benefits, constituted an improper attempt to attach that benefit in violation of § 42 U.S.C. 407(a).  I take further issue with the Court's continued failure to connect the dots when a district court orders an indigent defendant whose only source of income derives from Social Security benefits to pay fines, fees, and surcharges.  When a defendant has no assets, is disabled, and only receives a minimal amount of protected Social Security benefits monthly, I believe an order requiring payment from the defendant constitutes, at minimum, an indirect attempt to target those protected benefits.

¶31     In this instance, the District Court was aware of Yeaton's indigent and disabled status and lack of assets but nonetheless ordered him to pay all fines and fees on the basis they were mandatory.  I cannot interpret that as anything other than subjecting Yeaton and others like him to the Sisyphean task of satisfying both their judicially imposed fines and their basic human needs such as food and housing, all from a meager income.  The Court's

12

conclusion that the judgment is legal because the District Court failed to expressly mention Yeaton's Social Security benefits ignores this reality. Yeaton will remain unable to regain his civil rights and the full benefits of citizenship of the State of Montana until the judgment against him is satisfied. Given Yeaton's age and disability status, it is unlikely he would ever be successful at paying any large judgment against him. Inevitably, Yeaton would, at some point, come between a rock and a hard place. Given the nature of the task, Yeaton would be coerced into using his meager Social Security benefits to avoid revocation of probation or satisfy the judgment, at the cost of other needs, or risk continuing to be seen as less than a full citizen. In my opinion, this constitutes no real choice at all and serves no legitimate rehabilitative purpose. Likewise, the Court's position remains unsound. The Court simultaneously recognizes Yeaton's Social Security benefits may not be attached to satisfy his judgment, but nonetheless affirms the imposition of the debt, fully aware that no other assets exist for Yeaton to pay off the debt. I cannot agree with such an untenable position.

¶32 I dissent on Issue 2 as to Yeaton's $5,000 fine. First, the Court's reliance on *Mingus* proves ill-placed. Certainly, *Mingus* stands for the troubling proposition that statutorily mandated fines do not require an ability-to-pay inquiry. However, I take greater issue with the unnoticed distinction in the pertinent statutory section. Primarily, Mingus was sentenced under a different subsection of § 61-8-731, MCA, that pertaining to fourth DUIs; Yeaton was sentenced under the subsection pertaining to fifth or subsequent DUIs. Thus, the relevant language of § 61-8-731, MCA, at the time Mingus was sentenced differs from the statutory language relevant at Yeaton's sentencing. At the time of sentencing in

13

*Mingus*, no argument existed that the fine at issue was discretionary. Mingus was sentenced under § 61-8-731(1), MCA (2002), which provided a person shall be punished in the following manner: (a) a sentence of 13 months at a correctional facility or program; (b) a sentence of not more than five years with the Department of Corrections or Montana State Prison; *and* (c) a fine of not less than $1,000 or more than $10,000. Conversely, as discussed in ¶¶ 6-9, the language of § 61-8-731(3), MCA (2019), at the time of Yeaton's sentencing contained permissive, rather than mandatory, language. Accordingly, I would not conclude *Mingus*, as it pertains to mandatory and discretionary fines, makes anything clear in the instant case.

¶33 In addition to the ill-suited reliance on *Mingus*, the Court's conclusion fails to fully represent the record and cursorily dismisses Yeaton's contention that the $5,000 fine was discretionary. I believe Yeaton properly raised this argument below and would conclude the fine was improper. At the hearing, defense counsel and the District Court engaged in the following exchange regarding probation conditions:

> [Defense counsel]: One of the things that Mr. Yeaton struggles with is obviously paying for things. His income is $550. So, obviously, all of the fines and fees I am asking to be waived. 13 B, C, D, E, F, G and H. He gets social security and cannot afford those.
>
> .  .  .
>
> Additionally, #28 [concerning costs of probation and imprisonment] I realize that it says 'if financially able' as a cost of probation to pay the cost of imprisonment, we would ask-he's not financially able so we would ask that #28 be struck.
>
> .  .  .
>
> [District Court]: When you started telling me subsections.

14

[Defense counsel]: B, C, D, E, F, G and H. We would ask that all of those be struck considering his income.

[District Court]: Now G is the mandatory fine?

[Defense counsel]: Yes, Your Honor, but I believe that the federal law overrides that requirement of that fine. So I don't believe that Montana State can take his social security disability of $550 for that.

.   .   .

[District Court]: With respect to your position on 13G.

[Defense counsel]: Yes, Your Honor.

[District Court]: Has that been litigated anywhere?

[Defense counsel]: Um, yes, it has. I know *State v. Eaton*. . .

The Court adopts the State's argument that, by citing federal law as the basis for the waiver of the fine, Yeaton waived his argument that the fine was discretionary. I believe the Court's conclusion on this point contradicts itself and distorts the record. Based on the foregoing exchange, the Court concludes that Yeaton waived his argument that the mandatory fine was discretionary but, based on the sentence asking for "all of the fines and fees" to be waived, preserved the argument that the fees and surcharges were discretionary. Opinion, ¶¶ 15-16. I would not contort the record to reach such conflicting conclusions. While Yeaton clearly acknowledged the fine was mandatory, that admission came in response to the District Court's question and *after* asking the District Court to waive all fines on the basis that he would be unable to afford them. In my opinion, asking the District Court to waive "*all* of the fines and fees" (emphasis added) cannot be construed as anything other than asking the Court to do just that: exercise discretion and waive every

15

single fine and fee. As such, I would address Yeaton's argument that the "mandatory" fine was discretionary.

¶34   In interpreting statutes, this Court's duty "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. We have previously declined to "insert the disjunctive 'or' when the legislature chose to employ the conjunctive 'and.'" *State v. Miller*, 231 Mont. 497, 517, 757 P.2d 1275, 1288 (1988). We have also previously noted "[i]n its common usage, 'or' connotes the disjunctive, and it is used to express an alternative or give a choice of one among two or more things." *Meyer v. State Farm Mut. Auto. Ins. Co.*, 2000 MT 323, ¶ 17, 303 Mont. 1, 15 P.3d 899 (citing Black's Law Dictionary (6th ed. 1990)).

¶35   In 2019,[1] the version of § 61-8-731(3), MCA, applicable during Yeaton's sentencing hearing provided that a person shall be sentenced to "not less than 13 months or more than 5 years *or* be fined an amount of not less than $5,000 or more than $10,000, *or* both." (Emphasis added.) I see no reason to do the inverse and insert an "and" where the legislature chose to employ "or." *See Miller*, 231 Mont. at 517, 757 P.2d at 1288. Moreover, and contrary to the State's arguments, the statutory scheme set forth in

---

[1] During the 2021 Legislative session, the Legislature amended § 61-8-731(3), MCA, to provide for punishment by "a fine of not less than $5,000 or more than $10,000 *and* by imprisonment in the state prison for a term of not more than 10 years." 2021 Mont. Laws ch. 473, § 1 (emphasis added). I note, during testimony, proponents of the amendments testified "A lot of the people who are in this situation don't have the financial ability to pay a lot of fines, and *any imposition of a fine by a judge must first, um, requires a finding the person has the ability to pay.*" *House Judiciary Hearing Minutes in re HB 115* (Jan. 22, 2021) (11:10:57-11:11:10) (emphasis added). As relevant to Issue 3, proponents further stated, numerous times, the view that the Department of Corrections was depriving district court judges of their power.

16

§ 61-8-731, MCA, indicates the Legislature proved capable of differentiating between mandatory and permissive punishments.

¶36 The State's contention that interpreting § 61-8-731, MCA, as discretionary would lead to an absurd result by punishing fourth DUIs more severely than fifth DUIs falls flat. Preliminarily, I note that such a scheme already existed at the time of Yeaton's sentencing. Section 61-8-731(1), MCA (2019), provided the following punishments for the first through fourth DUI offenses:

> (a)(i) being sentenced to the department of corrections for placement in an appropriate correctional facility or program for a term of not less than 13 months or more than 2 years. The court shall order that if the person successfully completes a residential alcohol treatment program approved by the department of corrections, the remainder of the sentence must be served on probation. The imposition or execution of the sentence may not be deferred or suspended, and the person is not eligible for parole.
>
> (ii) being sentenced to either the department of corrections or the Montana state prison or Montana women's prison for a term of not more than 5 years, all of which must be suspended, to run consecutively to the term imposed under subsection (1)(a); *and*
>
> (iii) a fine in an amount of not less than $5,000 or more than $10,000; *or*
>
> (b)(i) being sentenced to an appropriate treatment court program for a term of not more than 5 years, with required completion; *and*
>
> (ii) a fine in an amount of not less than $5,000 or more than $10,000.

(Emphasis added.)

This statutory scheme, then, provided individuals charged with their first through fourth DUI may be sentenced to up to two years at a community correctional facility, five years with the Department of Corrections or state prison, *and* a fine. In my opinion, the language of § 61-8-731(1), MCA (2019), additionally bolsters Yeaton's argument that his fine

17

imposed under subsection (3) was discretionary. While it is true that we strive to avoid absurd results, our "role is not to determine the prudence of a legislative decision . . . [i]t is for the legislature to pass upon the wisdom of a statute." *Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶ 20, 354 Mont. 133, 227 P.3d 42 (citations omitted). Nor does inartful legislative drafting "excuse us from the responsibility of construing a statute as faithfully as possible to its actual text." *In re N.A.*, 2021 MT 228, ¶ 13 n.1, 405 Mont. 277, 495 P.3d 45 (citations omitted). The Legislature has indeed acted to resolve this inartful drafting. However, at the time Yeaton was sentenced, I see no logical construction of § 61-8-731(3), MCA (2019), supporting the contention that the fine was mandatory. I would conclude the fine imposed on Yeaton was discretionary.

¶37   In cases involving discretionary fines, whenever a defendant is "found guilty of an offense for which a felony penalty of imprisonment could be imposed, the sentencing judge may, in lieu of or in addition to a sentence of imprisonment, impose a fine *only* in accordance with subsection (3)." Section 46-18-231(1)(a), MCA; *Mingus*, ¶ 15 (emphasis added). Subsection (3) provides a "sentencing judge may not sentence an offender to pay a fine unless the offender is or will be able to pay the fine." Section 46-18-231(3), MCA. The sentencing judge is further required to consider the nature of the crime committed, the financial resources of the offender, and the nature of the burden that payment of the fine would impose. Section 46-18-231(3), MCA. That is exactly the case here. Yeaton was charged with a felony under § 61-8-731, MCA. His sentence arose from § 61-8-731(3), MCA, which provided for a felony penalty of imprisonment in lieu of or in addition to a fine. The Court notes the District Court's failure to make a serious inquiry

18

into Yeaton's ability to pay either the mandatory fine or the fees and surcharges. The District Court failed to abide by the statutory requirements of § 46-18-231(3), MCA.

¶38 A final note on the Court's conclusion that, even if Yeaton properly preserved his argument the $5,000 fine was discretionary, such sentence would only be objectionable, not illegal. The Court's conclusion seems to assert that Yeaton could preserve the issue only by objecting after the actual imposition of the sentence. Section 46-18-231(3), MCA, neither provides nor implies any such restriction. Nor have we ever imposed such restriction on that statute. Yeaton timely objected to his ability to pay *any* fine or fee on the basis that he could not afford to pay. The District Court failed to consider his ability to pay either the fine or the surcharges and fees. Accordingly, I would conclude Yeaton properly objected, the $5,000 fine was discretionary, and the District Court improperly failed to consider Yeaton's ability to pay.

¶39 I find the Court's conclusion as to issue 3 equally troubling. The Court concludes the District Court's order here is "just like the one we affirmed in *Ingram*." This conclusion parses Yeaton's argument too finely, narrows the scope of *Mingus*, and fails to clarify the conflicts between *Mingus* and *Ingram*. Straining to distinguish the instant case, the Court appears to construe Yeaton's argument as requiring the District Court to comment expressly on the matter of his employability and no other aspect of his ability to pay. ("Unlike in *Daricek*, the District Court did not opine on Yeaton's employability. Yeaton argues that without such a finding his costs should be remanded . . . In *Ingram*, we also affirmed a sentencing order with this same language and no comment on employability . . . ." Opinion, ¶¶ 25-26.) Yeaton makes no such argument. Instead, Yeaton

19

contends the District Court failed to inquire into *any* aspect of his ability to pay the costs of treatment. The record supports Yeaton's contention, and the plain holding of *Mingus* did not require specific findings of the defendant's future employability, but rather, an inquiry into the defendant's future ability to pay any costs of treatment. *Mingus*, ¶ 22.

¶40 I agree with the Court that clarity is needed in our precedent to guide Montana's trial courts when imposing financial conditions. The clarity I would offer, and which I believe is constitutionally and statutorily required, is that a defendant's indigency should *always* be considered by the *sentencing court* when financial obligations are imposed as part of a criminal sentence. It has become unnavigable for trial courts and litigants to parse out distinctions this Court has iterated between mandatory fines, discretionary fines, fees, surcharges, treatment and aftercare costs, counsel fees, and restitution. To add to the confusion, this Court has nuanced the law regarding when an objection must be made, what constitutes an objection and to which financial condition the defendant objected, which financial condition is informed by an ability to pay analysis, and what entity bears the responsibility of making such an assessment. It would seem to me that clarification might look something like this: when a criminal defendant says to a court they have no money or assets this is sufficient to invoke the court's assessment of ability to pay. Relevant to the issues here, our *Mingus*, *Daricek*, and *Ingram* progeny is very troubling.

¶41 This Court's decision in *Mingus* held for the first time that § 46-18-231, MCA, which requires a court to consider an offender's ability to pay before imposing a fine, only applied to discretionary, and not mandatory, fines. The Court arrived at this conclusion without citing any precedent and despite no such limitation existing in the plain language

of the statute. However, because I would hold that Yeaton's $5,000 fine was imposed pursuant to a discretionary sentencing statute, it is unnecessary to address whether Yeaton's indigency should be considered in the context of a mandatory fine. *Mingus*, however, should inform other aspects of this Court's decision as it addressed several financial conditions imposed in Mingus's sentence. Here, *Mingus*'s express holding that a "court must make specific findings to determine whether" a defendant is financially able to pay the costs of imprisonment, probation, and alcohol treatment is instructive. *Mingus*, ¶ 22. Moreover, we remanded in *Mingus* for the *trial court*, not the Department of Corrections, to make the requisite findings regarding Mingus's ability to pay for the aftercare program. *Mingus*, ¶¶ 23-24.

¶42 In *Daricek*, this Court concluded that the responsibility for assessing ability to pay treatment costs could be borne by the Department of Corrections. We held that §§ 53-1-501 and 53-1-502, MCA, properly deferred to the Department of Corrections responsibility for assessing an offender's ability to pay treatment costs. *Daricek*, ¶ 14. We attempted to distinguish *Mingus* on the ground that the trial court in *Daricek* made specific findings concerning Daricek's ability to pay. *Daricek*, ¶¶ 17-18. We noted the district court's "specific finding . . . that Daricek likely would be able to work upon release from custody . . . did not run afoul of *Mingus*." *Daricek*, ¶ 17. We tenuously "threaded the needle" in *Daricek* to avoid entanglement with *Mingus*, ultimately resting our conclusion on two grounds: the district court's compliance with the plain language of § 61-8-731(4)(b), MCA, *and* the district court's specific findings as required by *Mingus*. *Daricek*, ¶ 18. We noted

21

"Section 61-8-731(4)(b), MCA, requires no more than what the District Court did." *Daricek*, ¶ 18.

¶43 In *Ingram*, Ingram argued that *Mingus* should be overruled because a sentencing court's failure to consider an offender's ability to pay a fine, regardless of whether it was mandatory or discretionary, was unconstitutional. *Ingram*, ¶¶ 9-10. We declined to address the issue, finding that it had not been preserved. *Ingram*, ¶ 10. Next, we turned to whether the sentencing court should assess Ingram's ability to pay treatment costs. *Ingram*, ¶ 13. Inconsistent with *Mingus*, we held in *Ingram* that "it is the Department of Corrections, not the sentencing court, which assesses the defendant's ability to underwrite the costs associated with his or her sentence." *Ingram*, ¶ 15. The *Ingram* Court thus failed to appreciate the nuances of *Daricek* and in doing so jettisoned *Mingus*'s requirement that the *sentencing court* make specific findings of an offender's ability to pay treatment costs. *Ingram* failed to address the requirement in *Mingus*, arguably diluted subsequently in *Daricek*, that the district court make a specific finding of the defendant's ability to pay. Instead, by eliding over this requirement, *Ingram* implicitly overruled *Mingus* by utilizing only part of *Daricek*'s analysis and by relieving the sentencing court of any requirement to assess ability to pay treatment costs. The Court builds on *Ingram*'s faulty reasoning and implicit rejection of *Mingus* by clinging to the conditional language of the District Court's order and allowing the sentencing court to delegate its responsibility to assess ability to pay treatment costs to the Department of Corrections.

¶44 In my opinion, allowing the Department of Corrections to assess completely the ability of a defendant to pay treatment costs, without any finding by the District Court

22

concerning the defendant's ability to pay, contradicts this Court's longstanding precedent and the State of Montana's correctional and sentencing principles. "Sentencing and punishment must be certain, timely, consistent, and understandable." *State v. Betterman*, 2015 MT 39, ¶ 28, 378 Mont. 182, 342 P.3d 971 (quoting § 46-18-101(3)(a), MCA). Must, of course, is "mandatory, rather than permissive." *Montco v. Simonich*, 285 Mont. 280, 287, 947 P.2d 1047, 1051 (1997) (citations omitted). I believe deferring entirely to the Department of Corrections to determine defendants' ability to pay at some point in the future creates a looming shadow of punishment and deprives defendants of the certainty sentencing and punishment must provide. I would accept Yeaton's call to reconsider *Ingram*, *Mingus* and *Daricek,* and to clarify our precedent as it relates to the imposition of financial obligations on an indigent defendant.

¶45 Turning now to the specifics of the Court's analysis in the context of this troubling trilogy, the Court concludes that *Mingus* is "easily distinguishable" on the basis that the oral pronouncement of Mingus's sentence unconditionally required Mingus to pay without consideration of his financial ability. In my opinion, this tenuous and minor distinction does not render *Mingus*'s analysis of ability to pay treatment costs wholly inapplicable, as the Court concludes.[2] Here, as in *Mingus*, the District Court was fully aware of Yeaton's financial status and lack of assets. *Mingus*, ¶ 21. Here, as in *Mingus*, the District Court ordered Yeaton to pay the costs of treatment without making the requisite findings regarding Yeaton's ability to pay. *Mingus*, ¶¶ 7, 23. I see no meaningful reason *Mingus,*

---

[2] Again, I agree with that part of *Mingus* that holds an indigent's ability to pay treatment costs should be considered by the sentencing court.

23

as it pertains to treatment costs, should not apply; nor any reason not to accept Yeaton's call to address the inherent conflict between *Mingus* and *Ingram* and *Daricek*.

¶46 The Court's continued inability to provide defendants a clear expectation of the circumstances in which they can expect courts to consider their ability to pay court-imposed fines and fees troubles me. I remain hopeful that one day this issue will present itself in a manner more acceptable to the Court. In the meantime, I cannot say perpetuating the cycle of poverty by allowing courts to wantonly impose exorbitant fees on indigent defendants is 'justice.' For all of these reasons, I would readdress *Ingram* and conclude Yeaton's $5,000 fine and the imposition of costs of treatment and imprisonment were improper. As I believe the $5,000 fine was discretionary under the statute, this case is perhaps not the proper case to reconsider whether an ability to pay analysis is constitutionally required for mandatory fines.

/S/ LAURIE McKINNON