DA 23-0196

FILED

08/05/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0196

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 172N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL PAUL SULLIVAN,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-22-54
Honorable Brenda R. Gilbert, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Carrie Garber, Assistant
Attorney General, Helena, Montana

            Chad Glenn, Park County Attorney, Livingston, Montana


                 Submitted on Briefs:  May 14, 2025

                      Decided:  August 5, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The facts of this case led to multiple charges being filed against Appellant Michael Paul Sullivan (Sullivan) in two counties. Sullivan resided in Emigrant, Montana with his biological daughter, A.S. A second biological daughter, A.S.S., lived with Sullivan before moving out in 2019. In 2021, a family friend requested that Sullivan house her minor step-daughter, J.M., so J.M. could attend school in the Gardiner School District. J.M. began living with Sullivan and A.S. in August of 2021. A.S. left Emigrant in the fall of 2021 to attend college in Helena. In December of 2021, Sullivan and J.M. drove to Helena to spend time with A.S. and stayed with her at a motel. A.S. slept on the sofa bed and Sullivan and J.M. shared the main bed. Attempting to sleep, A.S. noticed sounds of sexual contact between J.M. and Sullivan. She then witnessed Sullivan follow J.M. into the bathroom and heard more noises. A.S. opened the bathroom door and saw J.M. near the bathtub, naked from the waist down, and Sullivan walking away from J.M. to grab a towel for his hands and mouth. A.S. reported her suspicions of sexual abuse to Child Protective Services. Upon further investigation, J.M. disclosed instances of non-consensual sexual contact from Sullivan occurring in both Helena and Emigrant, and law enforcement officers were able to recover "a large amount of sexual paraphernalia" from a search of Sullivan's

2

home to corroborate J.M.'s allegations, including evidence of cameras strategically hidden where J.M. would undress and bathe. The State also uncovered evidence of Sullivan abusing A.S.S. in Park County.

¶3 Sullivan was arrested in Lewis and Clark County on December 24, 2021, and charged with one count of sexual intercourse without consent (SIWOC) for the abuse of J.M. that occurred in Helena (Cause No. DC-22-24). He spent four days in the Lewis and Clark County jail before posting bond. Sullivan was charged in Park County with incest and sexual assault of A.S.S. (Cause No. DC-22-29). Sullivan was incarcerated in Park County from February 4-11, 2022, and again from April 27-28, 2022, for the cases related to A.S.S. and J.M., respectively. On May 18, 2022, Sullivan was charged with two more counts of SIWOC, one count of sexual abuse of children, and one count of tampering with physical evidence for crimes committed against J.M. in Park County (Cause No. DC-22-54). The Park County District Court continued the bond Sullivan had previously posted in Lewis and Clark County, which allowed his continued release on several conditions, including that he not leave the state or have unsupervised contact with minors.

¶4 On January 10, 2023, Sullivan entered into a binding global Acknowledgment of Rights and Pretrial Agreement (Plea Agreement), agreeing to plead guilty to one count of SIWOC in Park County and one count of SIWOC in Lewis and Clark County in exchange for the dismissal of all other charges. The Park County District Court set a change of plea hearing for January 17, 2023. The Plea Agreement recommended that Sullivan be sentenced to thirty years in Montana State Prison (MSP) with twenty years suspended in

3

both cases, the sentences to run concurrently. The Lewis and Clark County District Court accepted the Plea Agreement and, on January 11, 2023, sentenced Sullivan accordingly. Later that day, Sullivan notified the Park County District Court that he had been sentenced and taken into custody in Lewis and Clark County. He requested transport to Park County so he could appear in person for his change of plea hearing. The Park County District Court then issued an order directing the Park County Sheriff's Office (PCSO) to transport Sullivan from Lewis and Clark County to Park County. Sullivan was transported to Park County on January 11, 2023, and placed on a Department of Corrections (DOC) hold.

¶5 At the change of plea hearing, on January 17, 2023, Sullivan acknowledged that he understood the terms of his Plea Agreement, which required Sullivan to register as a Tier II sexual offender. The Plea Agreement stated, "the Defendant will pay court surcharges," and the District Court confirmed that fines and surcharges would be discussed at the time of sentencing. The parties then stipulated to use of the pre-sentence investigation (PSI) report prepared for the District Court in Lewis and Clark County, which noted Sullivan's age and financial information, including the fact that Sullivan was unemployed, received social security disability income (SSDI), and held approximately $5,000 in assets. The Park County District Court accepted Sullivan's change of plea. The District Court issued an order setting Sullivan's sentencing hearing for January 23, 2023, and a separate order releasing Sullivan on his own recognizance.

¶6 At the sentencing hearing, the Park County District Court rejected the recommended sentencing terms within the Plea Agreement and, instead, sentenced Sullivan to thirty years' commitment to the MSP, with 10 years suspended, plus a 10-year parole restriction.

4

The District Court gave its reasons for deviating from the recommended sentence on the record, stating:

> Mr. Sullivan demonstrates above-average risk and has a high degree dynamic risk, which will require significant intervention in a secured setting. . . . [T]he custodial sentence as called for by the plea agreement, and what the Court is aware of, or what that means, in terms of the normal course of serving the sentence, it's inadequate to provide for Mr. Sullivan's rehabilitation and inadequate to provide for security for the community.

When Sullivan's counsel asked about credit for time served during the six days Sullivan was released on his own recognizance, the District Court clarified that Sullivan had been "held by the custody of the Department of Corrections in his Lewis and Clark County case." The prosecutor said the DOC hold "wouldn't necessarily pertain to credit for time served in this case," and the District Court agreed. Sullivan's counsel then questioned why the District Court had released Sullivan on his own recognizance, and the court explained: "It's a matter of finances in that if he has been sentenced to the [DOC], there is no reason that the County has to pay for his incarceration." For the first time before the District Court, Sullivan's counsel mentioned Sullivan had also spent four days and seventeen hours in the Gallatin County Detention Center on charges related to J.M. from Park County. The attorney did not offer the dates or any evidence of the Gallatin County incarceration. The District Court stated Sullivan would be awarded credit for "each and every day of time served on this offense."

¶7 The District Court then dismissed all other charges against Sullivan and requested to "hear from counsel regarding Mr. Sullivan's financial circumstances relative to fines and fees." Sullivan's counsel asked that "the Court not impose fines and fees and also

5

waive any [public defender] fee." Counsel continued: "As the [c]ourt can see in the PSI . . . Mr. Sullivan receives SSDI. He is fully disabled, and . . . it's his only income."

¶8 Ultimately, the District Court granted Sullivan credit for just one day of time served. The District Court also ordered Sullivan to pay a $400 fine, noting "Mr. Sullivan is going to have a very long time to make payments on that," and imposed the statutory $20 felony surcharge, $50 Victim Witness Advocate Fee, and $10 Court Information Technology (IT) Fee. *See* § 45-5-503(3), MCA (providing for a fine up to $50,000 for felony SIWOC); § 46-18-236(1)(b), MCA (requiring the convicted offender pay the greater surcharge of "$20 or 10% of the fine levied for each felony charge"); § 46-18-236(1)(c), MCA (providing for "an additional $50 for each misdemeanor and felony charge under Title 45 or 61-8-1002"); § 3-1-317(1), MCA (mandating a $10 IT surcharge)). The District Court waived any requirement for Sullivan to pay for his public defenders. Sullivan's Judgment was entered on February 6, 2023, from which he now appeals. Sullivan challenges the credit for time served he received, and the imposition of fees, costs, and surcharges.

¶9 This Court reviews a district court's calculation of credit for time served *de novo* for legality. *State v. Risher*, 2024 MT 309, ¶ 6, 419 Mont. 395, 560 P.3d 1203. We review "sentencing conditions, fines, and fees 'first for legality, then for abuse of discretion as to the condition's reasonableness under the facts of the case.'" *State v. Yeaton*, 2021 MT 312, ¶ 8, 406 Mont. 465, 500 P.3d 583 (quoting *State v. Ingram*, 2020 MT 327, ¶ 8, 402 Mont. 374, 478 P.3d 799). To determine legality, we consider "whether the sentence falls within the statutory parameters, whether the district court had statutory authority to impose the sentence, and whether the district court followed the affirmative mandates of

6

the applicable sentencing statutes." *Ingram*, ¶ 8. "A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Smith*, 2021 MT 148, ¶ 14, 404 Mont. 245, 488 P.3d 531.

¶10 When imposing a fine or cost upon sentencing, the district court must first consider the nature of the offense, the offender's financial resources, and any hardship the sentence would create before "scrupulously and meticulously" examining whether the offender has the ability to pay. *State v. Dowd*, 2023 MT 170, ¶ 11, 413 Mont. 245, 535 P.3d 645; *State v. Gable*, 2015 MT 200, ¶ 21, 380 Mont. 101, 354 P.3d 566 (citing *State v. Moore*, 2012 MT 95, ¶ 18, 365 Mont. 13, 277 P.3d 1212). "'A district court's determination of a defendant's ability to pay an imposed fine, fee, cost, or other charge is essentially a finding of fact that this Court will reverse only if it is clearly erroneous.'" *Dowd*, ¶ 7 (citing *State v. Fisher*, 2021 MT 255, ¶ 25, 405 Mont. 498, 496 P.3d 561 (quoting *State v. Hotchkiss*, 2020 MT 269, ¶ 13, 402 Mont. 1, 474 P.3d 1273)). Findings of fact are clearly erroneous if they are "not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made." *Dowd*, ¶ 7 (citing *State v. Reynolds*, ¶ 16, 2017 MT 317, 390 Mont. 58, 408 P.3d 503).

¶11 Calculating credit for time served "'is not a discretionary act, but a legal mandate.'" *State v. Parks*, 2019 MT 252, ¶ 9, 397 Mont. 408, 450 P.3d 889 (quoting *State v. Hornstein*, 2010 MT 75, ¶ 12, 356 Mont. 14, 229 P.3d 1206). Under Montana law, a defendant is entitled to credit for each day of incarceration prior to or after a conviction.

Section 46-18-403(1)(a), MCA. Section 46-18-201(9), MCA, provides: "when imposing a sentence under this section that includes incarceration in a detention facility or the state prison . . . the court shall provide credit for time served by the offender before trial or sentencing." In *Risher*, we explained that "the time served calculation beg[ins] on the date that the sentencing court gain[s] jurisdiction over the offender *and the offender* [*is*] *detained subject to that jurisdiction*." *Risher*, ¶ 14 (emphasis added). In this context, whether a defendant has been detained subject to a given jurisdiction depends on whether that particular jurisdiction has restrained his liberty. *Risher*, ¶ 17 (citing *State v. Crazymule*, 2024 MT 58, ¶ 12, 415 Mont. 536, 545 P.3d 66). The sentencing court must, therefore, "'determine the amount of time to credit based on the *record relating to the offense for which the defendant is being sentenced on without considering other criminal proceedings or DOC incarcerations or holds*.'" *Risher*, ¶ 16 (quoting *Killam v. Salmonsen*, 2021 MT 196, ¶ 17, 405 Mont. 143, 492 P.3d 512) (emphasis added).

¶12    There are also circumstances in which defendants are not entitled to credit for time. "A person who posts bail and is released is not incarcerated and will not receive credit for time served." *Parks*, ¶ 10 (citing *State v. Gulbranson*, 2003 MT 139, ¶¶ 12-13, 316 Mont. 163, 69 P.3d 1187, *overruled in part on other grounds by State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978). This is true of a defendant who posts bond. *See Killam*, ¶ 18 (sentencing courts must "provide credit for each day the defendant was incarcerated on the offense for which he is being sentenced . . . from the day of arrest to bond posting"). Likewise, a defendant released on his own recognizance does not suffer a deprivation of liberty and does not receive credit for that time. *Risher*, ¶ 17; *Killam*, ¶ 18.

¶13 Here, the State concedes Sullivan is entitled to a total of seven days' credit for time served. The State arrives at this number by counting the four days and seventeen hours Sullivan's counsel said he was incarcerated in Gallatin County Detention Center as five days,[1] plus the time over two calendar days Sullivan was detained in Park County on April 27-28, 2022. Sullivan also contends he is entitled to thirteen extra days for the time he spent on the DOC hold awaiting the change of plea hearing in Park County and the time he was released on his own recognizance. We disagree with Sullivan's contention and conclude he is entitled to the time conceded by the State—a total of seven days.

¶14 For this purpose, Park County first gained "jurisdiction" over Sullivan when he was arrested in early 2022, following J.M.'s disclosures in the Lewis and Clark County case about abuse in Emigrant. Sullivan was released from Park County's jurisdiction when the District Court approved for this charge the bond he posted in Lewis and Clark County. Sullivan thus remained out on bond for the Park County charges until his change of plea, after which he was again released on his own recognizance on January 18, 2023. It is of no consequence in determining credit for time served that Sullivan was placed within DOC's custody on a hold between January 11 and January 18, 2023, because that hold originated from Sullivan's sentencing in Lewis and Clark County. As the prosecutor correctly informed the District Court during the sentencing hearing, Sullivan's time spent in DOC custody on another case does not amount to credit for time served in the Park

---

[1] Beyond counsel's statements before the District Court, there is no evidence in the record supporting the claim that Sullivan spent any amount of time in the Gallatin County Detention Center. Nevertheless, the State concedes Sullivan is entitled to five days' credit for this time and we include it herein.

County case. *See Killam*, ¶ 17 (stating the sentencing court need not consider "other criminal proceedings or DOC incarcerations or holds" when determining credit for time served).

¶15 Further, Sullivan is not entitled to the time in which he was released on his own recognizance, from January 18-23, 2023, because his liberty was not restrained by Park County. As the District Court explicitly stated, releasing Sullivan on his own recognizance resulted in his placement back into DOC custody on the Lewis and Clark County case and ensured, as a "matter of finances," that DOC—not Park County—would be responsible for any costs incurred during that time. We conclude the District Court's refusal to credit Sullivan with the time he spent on the DOC hold or released on his own recognizance was correct under Montana's sentencing statutes.

¶16 Having promised Sullivan credit for "each and every day of time served on this offense," the Judgment issued thereafter by the District Court only credited Sullivan with one day, presumably for Sullivan's overnight incarceration from April 27-28, 2022. The parties both agree that, at a minimum, Sullivan is entitled to six additional days encompassing the time he purportedly spent in Gallatin County Detention Center and the two calendar days he was in Park County in April of 2022. Accordingly, we reverse and remand for entry of a new Judgment crediting Sullivan with a total of seven days of time served in this matter.

¶17 Next, Sullivan argues the District Court imposed an illegal sentence when it ordered him to pay a fine, surcharges, and IT fees totaling $480 without first evaluating his ability to pay, and merely because the length of his sentence would give him time to pay. The

10

Legislature has provided that, in determining payment of costs, "the court shall take into account the financial resources of the defendant, the future ability of the defendant to pay costs, and the nature of the burden that payment of costs will impose." Section 46-18-232(2), MCA. This is consistent with statutory language affording sentencing courts discretion to waive costs. *See* § 46-18-232(2), MCA ("[t]he court may not sentence a defendant to pay costs unless the defendant is or will be able to pay them"). The State argues that the District Court considered more than merely the length of Sullivan's sentence, but acknowledges that an ability to pay consideration is required for these assessments.

¶18    We conclude the District Court erred by failing to adequately consider Sullivan's ability to pay and to enter findings thereon. Although there is no statutory guidance about what constitutes a sufficient inquiry into a defendant's ability to pay, our previous decisions are informative. In *Gable*, we concluded the district court adequately examined the defendant's ability to pay costs when it looked at the PSI *and* questioned both the State and defense about *specific* assets listed in the State's sentencing memorandum, including the value of certain line items like vehicles and motorcycles owned by the defendant, cash, checks, and bank accounts. *Gable*, ¶ 12. In *Reynolds*, we noted that "the [d]istrict [c]ourt spent significant time considering Reynolds's ability to pay" when it "delved into Reynolds's work history, ability to work, and financial circumstances" on the record, going so far as to state Reynolds was "'fit, able to work, earn money to pay towards [his] fines, fees, and surcharges without considering [his] social security.'" *Reynolds*, ¶ 10. We held that the district court had conducted a "scrupulous and meticulous" inquiry into Reynolds'

11

ability to pay, even though it used the PSI to inform the sentence and did not "directly question whether Reynolds would feel a financial hardship by the imposition of the fines." *Reynolds*, ¶¶ 28-29. But, in *Moore*, we determined the district court had not sufficiently investigated the defendant's ability to pay. The district court had access to Moore's PSI, which listed his assets and debts, but did not refer to the PSI during oral sentencing or in its written judgment. *Moore*, ¶ 14. What is more, the district court only tacitly acknowledged Moore's financial circumstances, did not question Moore, and conducted no other "inquiry or separate determination" into his ability to pay before ordering him to pay $1,340 in appointed counsel costs, $100 in prosecution costs, and $1,447.50 of jury costs, due upon commencement of parole. *Moore*, ¶¶ 9, 12, 14 (citing *State v. McLeod*, 2002 MT 348, ¶ 34, 313 Mont. 358, 61 P.3d 126). When Moore appealed, this Court remanded for a determination as to whether he could afford the costs imposed by the district court. *Moore*, ¶ 21.

¶19 Here, the District Court obviously considered the nature of Sullivan's offense to be of heightened severity, necessitating greater punishment. It was not lost on the District Court that the sentence it sought to impose would create a hardship for Sullivan beyond the "court surcharges" he agreed to pay per the Plea Agreement, but the District Court reasoned Sullivan would have "a very long time to make payments." However, the District Court made only a general inquiry about Sullivan's ability to make those payments by asking counsel to explain "Sullivan's financial circumstances relative to fines and fees." In response, counsel offered that Sullivan was disabled and received SSDI as his only source of income. From the PSI, the District Court knew Sullivan's age and that he had

12

$5,000 in assets, and it did refer to the PSI in oral sentencing, but the District Court did not seek to clarify whether Sullivan's assets were easily liquidated, whether Sullivan actually possessed those assets on the day of sentencing, or whether Sullivan had access to any other funds not mentioned in the PSI before it imposed the $400 fine and $80 of costs, fees, and surcharges. The District Court gave no reason as to why it decided to waive the public defender fee and impose the others.[2]

¶20 As in *Moore*, the District Court's attempt to understand Sullivan's financial circumstances fell short of the "scrupulous and meticulous" factual inquiry that we require when determining the defendant's ability to pay. *Moore*, ¶ 18; *Reynolds*, ¶ 29. We cannot say the District Court's imposition of fines, fees, costs, and surcharges was based on substantial credible evidence. Sullivan agreed to pay "surcharges" in the Plea Agreement, but the final determination of those will depend upon resolution of the underlying fines, and must be restated in an amended judgment. As such, we reverse and remand for further proceedings to develop the appropriate record as discussed herein.

¶21 Reversed and remanded for entry of factual findings regarding Sullivan's ability to pay fines, costs, and surcharges, and for entry of an amended judgment, including a total credit for seven days of time served.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

---

[2] Under § 46-8-113(1)(a)(ii), MCA, if the defendant pleads guilty to one or more felony charges prior to trial, the cost of assigned counsel from the Office of the State Public Defender is $800.

13

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON